**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 17 2008

DAVID J. MALAND, CLERK
BY_____
DEPUTY

| | | |
|---|---|---|
| **PRAXIS ENERGY AGENTS** | § | |
| **Plaintiff** | § | **C.A. NO._____** |
| | § | |
| **VS.** | § | **[Filed Pursuant to** |
| | § | **Rule 9(h) F.R.C.P.]** |
| **INDUSTRIAL CARRIERS INC.,** *in personam,* | § | |
| *and the bunker fuel oil aboard the* | § | 1 : 08CV0609 |
| **M/V GO PUBLIC, and the M/V GO PUBLIC,** | § | |
| *in rem,* **and Those at Interest Therein** | § | **In Admiralty** |
| **Defendants** | § | **Judge Crone** |

**PLAINTIFF PRAXIS ENERGY AGENTS' VERIFIED**
**ORIGINAL COMPLAINT,** *in rem* **and/or** *in personam,* **FOR ATTACHMENT AND/OR**
**SEIZURE AND POSSESSION**

TO THE JUDGE OF THIS COURT:

Plaintiff, **PRAXIS ENERGY AGENTS S. A.,** (hereinafter referred to as "Plaintiff"),

sues and claims against **INDUSTRIAL CARRIERS INC.** (hereinafter referred to as

"Defendant"), *in personam,* and the bunker fuel oil aboard the **M/V GO PUBLIC,** and the **M/V**

**GO PUBLIC,** *in rem,* and Those at Interest Therein (hereinafter referred to as Defendants or

Defendant as the case may be), and seeks to serve and attach or arrest for security and/or

recovery the said bunker fuel oil or other property aboard the Ship M/V GO PUBLIC now or

hereafter derived therefrom, whether or not removed therefrom, *in rem,* and moves for an order

authorizing the clerk of this Court to issue pursuant to Rule B of the Supplemental Rules for

Certain Admiralty and Maritime Claims a warrant of maritime attachment and/or seizure against

the bunker fuel oil or property of or attributed to Defendant INDUSTRIAL CARRIERS INC.

aboard or controlled by the ship M/V GO PUBLIC, and/or to recover and possess the Bunker

Fuel Oil referred to or described in the document copies attached and incorporated herein as

Exhibit "I" to which Plaintiff retains and claims interest pursuant to Rules C and/or D of the

Supplemental Rules of Certain Admiralty and Maritime Claims, and as grounds for claim and for the relief requested respectfully alleges and would show as follows:

    1.    This is an admiralty and maritime claim within the meaning of FED. R. CIV. P. 9(h) and is within the jurisdiction of this Honorable Court under 28 U.S.C. § 1333.

    2.    At all times hereinafter mentioned, Plaintiff is a duly organized non-U. S., foreign legal entity existing under the law and is officed overseas in Athens, Greece, and is at interest in the bunker fuel oil believed currently aboard the Ship M/V GO PUBLIC, a cargo vessel hired for transport, as described or referred to more particularly in the attached copies of Bunker Nominations, Invoices and Receipts in Exhibit "I".

    3.    Upon information and belief, the ship M/V GO PUBLIC, with the aforesaid bunker fuel oil, is now or will be during the pendency of this action within this District and within the jurisdiction of this Court.

    4.    The M/V GO PUBLIC is an ocean-going freight ship, Bahamas Flag, Official No. 9045900, believed currently at or about the Port of Beaumont, Beaumont, Texas, within the jurisdiction of this Court.

    5.    Upon information and belief, at the times material hereto Defendant INDUSTRIAL CARRIERS INC. is a foreign business (non-U.S.) entity, formed or organized in the Republic of the Marshall Islands, operating from an office and place of business at Odessa, in the Ukraine (and may also be operating under the name of DIAMANT CO LTD.) with affiliated offices in Moscow, Russia; Athens, Greece; Rio de Janeiro, Brazil; and Shanghai, China. Plaintiff is informed and believes and therefore alleges that none of the officers or principals of Defendant INDUSTRIAL CARRIERS INC. are now within this District, but that there now or will be during the pendency of this action certain goods, chattels, credits and effects attributed to

or claimed by Defendant INDUSTRIAL CARRIERS INC. within this District, including the bunker fuel oil or other property aboard or within the control of the ship M/V GO PUBLIC.

Other Defendants include, but are not necessarily limited to, those at interest in the M/V GO PUBLIC and also those listed in the Bunker Nominations attached hereto in Exhibit "I". Each aforementioned Defendant is believed to be a foreign business (non-U.S.) entity formed, organized and operating overseas.

6.      Additionally and alternatively, Defendant INDUSTRIAL CARRIERS INC. does not maintain an office or registered agent and cannot be found within this District, but said Defendant's property is believed aboard the M/V GO PUBLIC, and is subject to attachment in accord with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

7.      On or about September 10 and 12, 2008, Plaintiff entered into agreement and performance induced by Defendants INDUSTRIAL CARRIERS INC., the M/V GO PUBLIC and/or others at interest in the M/V GO PUBLIC, as evidenced by the attached Bunker Nominations included in Exhibit "I", under the terms and conditions of which Defendant INDUSTRIAL CARRIERS INC., the M/V GO PUBLIC and/or those at interest in the ship M/V GO PUBLIC have failed to perform in various respects, including in particular failing to pay for the Bunker Fuel Oil supplied and advanced by Plaintiff for and on behalf of Defendant INDUSTRIAL CARRIERS INC., the M/V GO PUBLIC and/or those at interest in the M/V GO PUBLIC, including for the fueling, powering and operation of the ship M/V GO PUBLIC and in furtherance of said ship's mission. A demand, as evidenced in the e-mail correspondence copied and attached hereto as Exhibit "II", for these matters has been forwarded to Defendant INDUSTRIAL CARRIERS INC., individually, and is hereby presented for service and notice also to the M/V GO PUBLIC and those at interest therein.

8.     Though duly demanded, neither of the Defendants has timely paid or satisfied the aforesaid amounts due Plaintiff, and neither of the Defendants is fulfilling the obligations under the terms and conditions of the Bunker Nominations or otherwise, and Plaintiff retains interest and lien in the Bunker Fuel Oil aboard the M/V GO PUBLIC.

9.     Plaintiff has performed the conditions, duties and obligations imposed to date under the Bunker Nominations, but neither the Defendant INDUSTRIAL CARRIERS INC., the M/V GO PUBLIC, nor those at interest in the M/V GO PUBLIC have paid for the Bunker Fuel that has been provided by Plaintiff. Defendants INDUSTRIAL CARRIERS INC., the ship M/V GO PUBLIC, and/or those at interest in the M/V GO PUBLIC have been enriched at Plaintiff's expense, and Plaintiff should have recovery under the Bunker Nominations or pursuant to the principles of quantum meruit, and/or should at least be allowed to receive possession and recover the remaining Bunker Fuel.

10.    In addition to the amounts due, Plaintiff should recover interest and all fees and costs, including attorney fees, associated with this proceeding and Plaintiff's effort to recover what is justly due or belongs to Plaintiff.

11.    The property to be attached, arrested or seized is believed aboard the ship M/V GO PUBLIC, which is currently at or about the Port of Beaumont, Beaumont, Texas, and there is need to serve and attach or seize said property before the M/V GO PUBLIC's departure or movement, or the consumption, transfer or loss of said property.

12.    To the extent any of the Defendants disputes any of the events, charges or amounts alleged or referred to by Plaintiff, or contends that Defendant INDUSTRIAL CARRIERS INC. or they have in fact duly fulfilled it or their obligations under the terms and conditions of the Bunker Nominations or otherwise, such is denied by Plaintiff, and Plaintiff

reserves its rights to demand and refer any dispute to Arbitration as provided or referred to in Clause 16 of the attached copy of the Bunker Nominations, and asks that the bunker fuel oil and/or other property aboard or attributable to the M/V GO PUBLIC be attached or seized in aid of and as security pending determination and resolution of any dispute, whether by arbitration or otherwise, as well as for purpose of service of notice and process upon Defendant(s).

WHEREFORE, Plaintiff prays that:

1. Process issue against Defendants and that said Defendants be cited to appear and answer the allegations of this Complaint;

2. Defendant INDUSTRIAL CARRIERS INC.'s property within this District be attached in the sum of $409,473.28 (USD) or more, with interest thereon and fees and costs;

3. Judgment or award be entered against Defendant INDUSTRIAL CARRIERS INC. in the sum of $409,473.28 (USD) or more, with interest thereon and fees and costs;

4. Process issue *in rem* according to the practices of this Honorable Court in cases of admiralty and maritime jurisdiction against the bunker fuel oil and any other property Defendant INDUSTRIAL CARRIERS INC. has interest in that is aboard the ship M/V GO PUBLIC or elsewhere within the jurisdiction of this Court, and that Defendant INDUSTRIAL CARRIERS INC. and any and all other persons claiming any right or interest thereto, be cited to file claim, appear and answer.

5. Plaintiff's claim be adjudged a preferred lien on said property in the amount of $409,473.28 (USD) or more, and said property be condemned or sold to satisfy said lien, with interest and costs; alternatively, Plaintiff should have such property based on the interest it retains therein under the applicable agreement or otherwise;

6.    Plaintiff be granted such other and further relief as may be just and proper, including but not necessarily limited to requiring Defendant(s) to post security in acceptable amount and form as may be appropriate to cover the claim, damages, loss, fees, costs and expense Plaintiff is entitled to recover.

Respectfully submitted,

BENCKENSTEIN & OXFORD, L.L.P.
P.O. Drawer 150
Beaumont, Texas 77704-0150
Ph. (409) 833-9182
Fax. (409) 833-8819
e-mail: asampson@benoxford.com

By: _____
      Alan G. Sampson
      State Bar No. 17560000
      Joshua C. Heinz
      State Bar No. 24053264
   **ATTORNEYS FOR PLAINTIFF**
   PRAXIS ENERGY AGENTS

# Exhibit "I"

 **Worldwide Marine Oil Suppliers**

# BUNKER NOMINATION

10 September, 2008

### TO: INDUSTRIAL CARRIERS INC.
### ATTENTION: MR. SERGEY MATVEYENKO

## CONTRACT NUMBER: 3465-254-gd

ACTING AS CONTRACTUAL SELLERS AND IN ACCORDANCE WITH INSTRUCTIONS RECEIVED BY PURCHASER M/V **GO PUBLIC** AND OWNERS WE HAVE NOMINATED THE FOLLOWING BUNKER STEM:

| | |
|---|---|
| BUYER: | INDUSTRIAL CARRIERS INC. |
| | AND/OR GO PUBLIC MARITIME CO. SA |
| | AND/OR ANTARES SHIPMANAGEMENT SA |
| | AND/OR RIGOS MARINE ENTERPRISES |
| | AND/OR M/V GO PUBLIC |
| | AND/OR MASTER/OWNERS/MANAGERS/OPERATORS |
| SELLER: | PRAXIS ENERGY AGENTS S.A. |
| PHYSICAL SUPPLIER: | SHIP-SERVICE S.A. |
| MOTOR VESSEL: | GO PUBLIC (FLAG: BAHAMAS, IMO#9045900) |
| PORT OF SUPPLY: | SWINOUJSCIE |
| DATE OF DELIVERY: | 14TH  20TH OF SEPTEMBER, 2008 |
| QUANTITY/PRICE: | 100 MTS (IFO-380cSt, LOW SULPHUR) AT USD 615.00 / MT |
| TRANSPORTATION: | DELIVERED BY BARGE |
| CALLING COSTS: | --- |
| EXTRA CHARGES: | OVERTIME, TAXES ETC., IF INCURRED. |
| CANCELLATION FEES: | AS PER PHYSICAL SUPPLIER S TERMS AND CONDITIONS, IF APPLICABLE. |
| OBSERVERS: | OPERATIONS TO BE WITNESSED BY THE VESSEL S REPRESENTATIVE. |
| AGENTS: | BALTA SA |
| TERMS OF PAYMENT: | WITHIN THIRTY (30) DAYS FROM DATE OF DELIVERY VIA WIRE TRANSFER UPON PRESENTATION OF INVOICE (FAX) WHEREAS COPY OF D/R WILL BE FORWARDED WHEN WE HAVE RECEIVED THE SAME. |

### SPECIAL (NO OTHER TERMS TO APPLY):

SELLER/SUPPLIER GUARANTEE THAT THE SULPHUR CONTENT OF THE BUNKER SUPPLIED WILL NOT EXCEED 4.5% (M/M) AND SELLER/SUPPLIER MUST NOT FAIL TO PRODUCE A CERTIFICATE 'BUNKER DELIVERY NOTE' TO SHOW THE EXACT SULPHUR CONTENT AND OTHER INFORMATION AS REQUIRED WHICH READ AS FOLLOWING:-

- NAME AND IMO NUMBER OF THE VESSEL
- PORT
- DATE OF COMMENCEMENT OF DELIVERY
- NAME, ADDRESS AND TELEPHONE NUMBER OF BUNKER SUPPLIER
- PRODUCT NAME(S)
- QUANTITY (METRIC TONS)
- DENSITY AT 15 DEGREE CENTIGRADE (KG/M3)
- SULPHUR CONTENT (%M/M)
- A DECLARATION SIGNED AND CERTIFIED BY THE BUNKER SUPPLIER'S
  REPRESENTATIVE THAT THE BUNKER SUPPLIED IS IN CONFORMITY WITH
  REG 14(1) OR (4)(A) AND REG 18(1) OF THE ANNEX VI OF MARPOL

| | | |
|---|---|---|
| One Stamford Plaza, Suite 10-15 | 28 Voulgaris Avenue | The Gateway East, Suite 33-05 |
| 263 Tresser Blvd. Stamford, CT 06901, USA | 166 74 Glyfada, Athens, Greece | 152 Beach Road, Singapore 189721 |
| Telephone: +(1) 203-357-0705 | Telephone: +(30) 210-968 2100 | Telephone: +(65) 6403 3500 |
| Facsimile: +(1) 203-357 0780 | Facsimile: +(30) 210-968 2150 | Facsimile: +(65) 6403 3590 |
| Email: newyork@praxisenergyagents.com | Email: athens@praxisenergyagents.com | Email: singapore@praxisenergyagents.com |

                                        Worldwide Marine Oil Suppliers

# BUNKER NOMINATION

### 10 September, 2008

73/78.

1.  BUYER HAVE THE RIGHT TO CONDUCT SAMPLING AND FURTHER ANALYSIS OF SAMPLES TAKEN FROM THE BARGE (SELLER TO ASSIST BUYER WHERE APPLICABLE WITH ARRANGING OF SAME) BEFORE OR DURING THE SUPPLY AND IF SUCH ANALYSIS SHOWS RESULTS WHICH ARE NOT IN LINE WITH THE QUALITY AGREED, BUYER HAVE THE OPTION TO CANCEL SUPPLY, WHILE CANCELLATION CHARGES COULD BE CHARGED, BUT ONLY IF THEY ARE APPLICABLE BY THE PHYSICAL.

2.  THE SELLER/SUPPLIER DOES NOT HAVE A LIEN AGAINST THE VESSEL IN RESPECT OF THE VALUE OF THE BUNKERS, PROVIDED ALL FUNDS FOR BUNKERS RECEIVED BY SELLER.

3.  BUYER HAS THE OPTION TO APPOINT AN INDEPENDENT SURVEYOR, MUTUALLY AGREEABLE BY BOTH PARTIES, TO VERIFY FINAL QUANTITIES OF BUNKERS SUPPLIED TO THE VESSEL AS WELL AS QUALITY. IN SUCH A CASE QUANTITY AND QUALITY OF BUNKERS DETERMINED BY SURVEYOR ARE TO BE MUTUALLY ACCEPTED BY BOTH PARTIES.

4.  IN CASE OF ANY DISPUTE REGARDING QUALITY OF A PRODUCT SUPPLIED SELLER/SUPPLIER AND BUYER TO APPOINT MUTUALLY AGREEABLE BY BOTH PARTIES RECOGNIZABLE SURVEYOR TO PERFORM TEST ANALYSIS AND IF SUCH ANALYSIS SHOWS OFF-SPECIFICATION BUNKERS SELLER/SUPPLIER IS TO BEAR ALL LIABILITIES WHICH MAY ARISE THERE FROM.

5.  BUNKER DELIVERY RECEIPT FOR EVENTUAL QUANTITIES SUPPLIED IS TO BE ISSUED AND SIGNED AFTER COMPLETION OF BUNKERING ONLY.

6.  SPECIFICATION OF PRODUCT(S) SUPPLIED ARE TO BE IN ACCORDANCE WITH BUYER'S REQUESTED REQUIREMENTS, IF SPECIFIED.

7.  ANY PRODUCT SUPPLIED IS TO CONFORM TO ISO 8217:2005 (E), NO OTHER SPECIFICATION IS TO APPLY. IN CASE OF QUALITY DISPUTE, BARGE'S AND VESSEL'S RETAINED SAMPLE (DULY WITNESSED/SIGNED BY VESSEL'S REPRESENTATIVE) SHALL BE THE SAMPLE ADMISSIBLE FOR ANALYSIS TO DETERMINE QUALITY OF PRODUCT(S) SUPPLIED.

8.  SELLER/SUPPLIER GUARANTEE THAT BARGE'S STAFF WILL ALLOW TO VESSEL'S STAFF TO PERFORM MEASUREMENTS IN ALL BARGE'S TANKS (INCLUDING TANKS NOT FOR SUPPLY AND VOID SPACES) BEFORE AND AFTER SUPPLY. SUPPLIER GUARANTEES THAT CALIBRATION TABLES (INCLUDING TABLES OF ADJUSTMENTS FOR TRIM) FOR ALL BARGE'S TANKS ARE AVAILABLE ON BARGE.

9.  ANY DELAYS CAUSED BY FAULT OF SUPPLYING BARGE ARE TO BE AT FULL RESPONSIBILITY OF SELLER/SUPPLIER.

10. THE SELLER HEREBY CONFIRMS THAT THERE IS NO INTERMEDIARY TRADER(S) BETWEEN SELLER AND PHYSICAL SUPPLIERS AND THAT SELLER WILL BE REMITTING FUNDS FOR BUNKERING DIRECTLY TO BANK ACCOUNT OF PHYSICAL SUPPLIER.

One Stamford Plaza, Suite 10-10          28 Vouliagmenis Avenue           The Gateway East, Suite 33-03
263 Tresser Blvd. Stamford, CT 06901. USA  166 74 Glyfada, Athens, Greece    152 Beach Road. Singapore 189721
Telephone: +(1) 203-357 9700             Telephone: +(30) 210-960 2100      Telephone: +(65) 6403 3500
Facsimile: +(1) 203-357 9760             Facsimile: +(30) 210-960 2150      Facsimile: +(65) 6403 3599
Email: newyork@praxsenergyagents.com     Email: athens@praxisenergyagents.com  Email: singapore@praxisenergyagents.com



**PRAXIS** energy agents                                    Worldwide Marine Oil Suppliers

# BUNKER NOMINATION

### 10 September, 2008

11. NOTWITHSTANDING ANY OTHER PROVISION IN THE BUNKER SUPPLY AGREEMENT, THE SELLER/SUPPLIER HEREBY WARRANTS THE FOLLOWING:

12. ALL BUNKERS SUPPLIED SHALL COMPLY WITH THE QUALITY REQUIREMENTS OF MARPOL ANNEX VI;

13. THE VESSEL SHALL BE PROVIDED WITH A DELIVERY NOTE IN ACCORDANCE WITH AND CONTAINING THE MINIMUM INFORMATION REQUIRED BY MARPOL ANNEX VI;

14. THE VESSEL WILL BE PROVIDED WITH A REPRESENTATIVE SAMPLE OF THE BUNKERS OIL DELIVERED IN ACCORDANCE WITH MARPOL ANNEX VI AND THE GUIDELINES SET OUT IN MEPC96(47).

15. THE SELLER TO FURNISH LIEN WAIVER FROM SUPPLIER WITHIN 30 DAYS AFTER SUPPLY PROVIDED ALL FUNDS WILL BE RECEIVED BY SELLER FROM BUYER.

16. IN CASE OF ANY DISPUTE SAME TO BE REFERRED TO ENGLISH LAW AND RESOLVED IN ACCORDANCE WITH LMAA SMALL CLAIMS PROCEDURE.

17. **ANY COMPLAINT AS TO THE QUALITY OF BUNKERS IS TO BE MADE BY THE BUYER TO THE SELLER/SUPPLIER WITHIN 30 DAYS AFTER DATE OF DELIVERY. ANY CLAIM AS TO THE QUANTITY IS TO BE MADE BY THE BUYER TO THE SELLER WITHIN 7 DAYS AFTER DATE OF DELIVERY.**

18. BUYERS SHALL CONFIRM THEIR AGREEMENT TO ABV SPECIAL TERMS OF DELIVERY, ANY ERRORS OR OMISSIONS IN THE ABOVE SHOULD BE REPORTED IMMEDIATELY.

THE DETAILS OF THIS NOMINATION ARE BEING SENT TO BOTH END USER AND SUPPLIER. ANY ERRORS OR OMISSIONS SHOULD BE REPORTED BY EITHER PARTY IMMEDIATELY.

One Stamford Plaza- Suite 16-16
263 Tresser Blvd- Stamford, CT 06901. USA
Telephone: +(1) 203-357 0700
Facsimile +(1) 203-357 0760
Email: newyork@praxisenergyagents.com

38 Vouliagmenis Avenue
166 74 Glyfada, Athens, Greece
Telephone: +(30) 210-960 2100
Facsimile +(30) 210-960 2180
Email: athens@praxisenergyagents.com

The Gateway East, Suite 33-05
152 Beach Road. Singapore 189721
Telephone: +(65) 6403 3500
Facsimile: +(65) 6403 3590
Email: singapore@praxisenergyagents.com

                                          Worldwide Marine Oil Suppliers

**STANDARD TERMS AND CONDITIONS FOR THE SALE OF MARINE BUNKER FUELS AND LUBRICANTS**

## 1 JUNE 2002

1.00   **INTRODUCTORY**        These terms and conditions are the general standard terms and conditions under which Praxis Energy Agents S.A. of British Virgin Islands (the Company) is prepared to enter agreement (the Agreement) with another party (the Buyer) to supply to the Buyer marine bunker fuels, and/or lubricants and/or other products.  These terms and conditions may be referred to as  Praxis Standard Terms and Conditions .  Each Agreement will be as specifically negotiated between the Company and the Buyer as evidenced by the Company s confirmation of stem  facsimile message (the Bunker Nomination) and in the event of any conflict between these terms and conditions and the terms of the Bunker Nomination the terms of the latter shall prevail.

2.00   **DEFINITIONS**
2.01   **Agreement**  As defined in Clause 1.01
2.02   **Basic Cost**  The basic cost of Product calculated by multiplying the Unit Price by the quantity of Product delivered to the Vessel.
2.03   **Company**  Includes in addition to the Company itself, its servants, agents, assigns, sub contractors, and any and all other persons acting under the Company s instructions in fulfillment compliance or observance of this Agreement  unless the context otherwise requires.
2.04   **Bunker Nomination**  As defined in clause 1.01.  (The term facsimile also to be read as Telex throughout)
2.05   **Buyer (Purchaser)**  The party so described in the Bunker Nomination together with any agent , principal, associate , manager, partner, servant, parent, subsidiary, owner, or shareholder thereof.
2.06   **Delivery**  As defined in Clause 8.00
2.07   **Due Date**  The date specified in the Bunker Nomination for payment of the Price and all other fees, costs, charges and like items.
2.08   **Gender, Singular and Plural**  Unless the context otherwise requires, all references in the Agreement to one gender shall be deemed to include all others and references to the singular shall be deemed to include the plural vice versa.
2.09   **Physical Supplier**  The person who physically supplies the Product to the Vessel together with that person s servants, agents, successors, sub-contractors and assigns.  The Physical Supplier may be the Company or any other person.
2.10   **Port of Supply**  The port or other readily identifiable geographical location specified in the Bunker Nomination wherein or adjacent to which is the Point of Delivery.
2.11   **Point of Delivery**  The precise place at which Delivery is to be effected as provided  in the Bunker Nomination or as thereafter confirmed, advised or revised by the Company or the Physical Supplier being a berth, mooring, anchorage or other point within, adjacent to or associated with the Port of Supply.
2.12   **Price**  As defined in Clause 11.00
2.13   **Product**  The fuels, oils, lubricants, goods, items, equipment  and materials of whatever type and description as specified in the Bunker Nomination, the subject of the Agreement.
2.14   **Unit Price**  The rate of cost in United States Dollars (or such other currency specified in the Bunker Nomination) per metric tonne (or such other unit of measurement specified in the Bunker Nomination) or Product as specified in the Bunker Nomination.
2.15   **Motor Vessel** or **Vessel**  The vessel, ship or craft duly nominated to receive Product as specified in the Bunker Nomination.
2.16   **Written, in Writing and Notice**  Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier, telex, facsimile transmission or any other medium which produces a tangible result for the intended recipient.  The communication shall be deemed to have been given and received upon completion of transmission for any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter-post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

3.00   **HEADINGS**  The use of headings and explanatory notes is for convenience and elucidation only.  They are not part of the Agreement.

4.00   **ENTIRETY AND VALIDITY**  These terms and conditions together with the Bunker Nomination constitute the entire Agreement.  No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Company.  If any provision of the Agreement shall to any extent  be invalid or unenforceable  the remainder of the Agreement shall not be affected thereby.

5.00   **FORCE MAJEURE**  The Company shall not be liable for any failure to fulfil any term or condition of the Agreement if fulfilment has been delayed, hindered or prevented by any circumstances whatsoever which are not within the immediate control of the Company including but without limiting the generality of the foregoing, any strike, lockout or labour dispute or reasonable apprehension thereof, any governmental order, request or restriction, any

limitation restriction or interruption to existing or contemplated sources of supply of Product or the means of supply thereof.

**6.00   BROKERS AND AGENTS**
6.01     Unless the party with whom the Company is corresponding specifically declares to the Company prior to dispatch by the Company of the Bunker Nomination that the party with whom the Company is corresponding is not the Buyer and at the same time provides to the Company the full name and address of the Buyer then the party with whom the Company is corresponding shall be deemed to be the Buyer.
6.02     Without prejudice to the provisions of clause 6.01 in the event that the party with whom the Company is corresponding is an agent of the Buyer then the party with whom the Company is corresponding shall be jointly and severably liable with the Buyer to perform the Buyer s obligations under the Agreement notwithstanding that the party with whom the Company is corresponding purports to contract as a mere agent.
6.03     In any event the Owners and the Managers of the Vessel shall always be responsible jointly and severally with any other liable party.

**7.00   ASSINGMENT**   The Buyer shall not assign its interest in the Agreement without the prior written approval of the Company.  The Company may assign the Agreement and shall thereafter give notice thereof to the Buyer.

**8.00   DELIVERY**
8.01     **Allocation**   If the Company at any time and for any reason, believes that there may be a shortage of Product at the Port of Supply it may allocate its available and anticipated supply of Product among its Buyers in such a manner as it may in its absolute discretion determine.
8.02     **Restrictions**   The Company shall not be required to deliver Product into any of the Vessel s tanks or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for the export of which a Government permit is required and has not been obtained.
8.03     **Means of the Delivery**   Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.
8.04     **Barging**   In the event of delivery by barge, the Buyer shall at its own expense provide a clear and safe berth for the barge(s) alongside the Vessel s receiving lines and shall provide all necessary facilities and assistance required to effect delivery. The Buyer agrees to pay and indemnify the Company against all claims and expenses in respect of any loss, damage or delay caused by the Vessel to any barge and/or its equipment.
8.05     **Connection**   The Buyer shall make connection between the pipelines or delivery hoses and the Vessel s intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the Delivery.  The Buyer is responsible for ensuring that Product  is delivered at a safe rate and pressure and that all equipment utilised therefor is in a safe and satisfactory condition.
8.06     **Title/Retention of Ownership**   Delivery shall be deemed complete when the oil has passed the flange connecting the Physical Supplier s delivery facilities with the receiving facilities provided by the Buyer.  However, ownership of the Product  shall pass to the Buyer only after the Price has been received by the Company in full as provided in Clause 12.01. Until such time as the Price  is received in full by the Company the person in possession of the Product delivered shall hold the Product for the Company as a mere bailee.
8.07     **Risk**   The Company s responsibility for Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product leaves the Physical Supplier s fixed depot or wharf  facilities.  The Buyer agrees to indemnify without limit the Company in respect of any liability, claim or demand for which the Buyer is liable.
8.08     **Measurement**   The quantity of Product delivered hereunder shall be determined at the Physical Supplier s option by one of such generally recognised methods of measurement as is appropriate in the circumstances.
8.09     **Specification**   The Product to be delivered shall be as specified in the Bunker Nomination and other than as more precisely specified therein shall be of the Company s commercial grades of Product as currently offered generally to its Buyers at the time and the Point of Delivery for marine bunkering or lubrication purposes.  No other warranties, express or implied as to quality or fitness for any purpose, are given or form part of the Agreement.
8.10     **Compatibility and Segregation**   Responsibility for establishing compatibility  of Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.
8.11     **Substitution**   The Company may discharge its obligation to deliver Product as specified in the Bunker Nomination by supplying in substitution  therefor product of a different grade and/or  brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Bunker Nomination.
8.12     **Availability**   Subject to the availability of Product, the availability of facilities at the Port of Supply and Point of Delivery and the customary priority of  mail vessels and tankers, and to the Buyer giving notice in accordance with Clause 8.15, the Company will use its best endeavours to ensure that Product is delivered promptly upon the Vessel s arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence  of the Vessel not being supplied promptly or otherwise being delayed or restrained  for any reason whatsoever.
8.13     **Time**   The Buyer is responsible for ensuring that the Vessel is ready to receive Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.15.
8.14     **Delay** In the event that the Vessel s arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company. The Buyer should also ensure that the Vessel s agent at the Port of Supply is similarly informed and that the agent advises the  Physical Supplier accordingly.  At the Buyer s request the

Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel s delayed arrival.

8.15    **Notice and Other Delivery Requirements**  The Buyer must give not less than 72 hours notice (excluding Sabbaths, holidays and other non-working days at the Port of Supply) of the Vessel s readiness to receive Product to the Company and to the Physical Supplier.  Notice must be given during the Company s normal business hours (Monday to Friday inclusive, 0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  Furthermore it is in all circumstances and on all occasions the responsibility and duty of the Buyer to ascertain and where appropriate to comply with:

1.  the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel s time of arrival at the Point of Delivery.
2.  the exact location of the Point of Delivery
3.  any particular requirements to enable Delivery to be effected as efficaciously as possible

The Buyer is advised to instruct its agent at the Port of Supply to liaise with the Physical Supplier so as to ensure compliance with these provisions.

8.16    **Information** in response to a specific request for information from the Buyer in respect of the Point of Delivery the Company will use its best endeavours to obtain or provide the information requested.  Whilst every care will be taken to ensure that such information is accurate and up-to-date it is furnished on the strict understanding that It is not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

8.17    **Environmental Protection**  Without prejudice to Clause 8.07 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product.  Any action so taken shall be on behalf of and at the expense of the Buyer.

9.00    **CANCELLATION AND BREACH** In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product the Company shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit.  The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate.  So however that the provisions of Clauses 15.01,16.01 and 17.01 shall survive the determination of the Agreement in any event.

10.0    **LIENS** Where Product is supplied to a vessel, in addition to any other security, the Agreement is entered into and Product is supplied upon the faith and credit of the Vessel.  It is agreed and acknowledged that a maritime lien over the Vessel is thereby created for the Price of Product supplied and that the Company in agreeing to deliver Product to the Vessel does so relying upon the faith and credit of the Vessel.  The Buyer if not the owner of the Vessel hereby expressly warrants that he has the authority of the owner to pledge the Vessel s credit as aforesaid and that he has given notice of the provisions of this Clause to the owner.  The Company shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel.

11.00    **THE PRICE**

11.01    **Unit Price**  Where in the Bunker Nomination the Unit Price is stated to be not subject to variation the Unit Price will, subject to clause 8.14, not be varied.  In all other cases having agreed the Unit Price of the Product the Company will endeavour to refrain from making any increase.  However , the cost of marine bunkering products is volatile and the Company therefore reserves the right to increase the Unit Price at any time before delivery.  Notice of the increase will be given during the Company s normal business hours (Monday to Friday inclusive, 0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement.  If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed to have agreed to the revised Unit price and the Agreement so revised shall remain in full force and effect.

11.02    **Further Costs** In addition to the Basic Cost of the Product the Buyer agrees to pay for any charges raised in respect of taxes, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues and any and all other like costs and expenses incurred by or charged to the Company.  Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

The contracted prices are duty free only on the basis that the nominated vessel previous and next port of call are outside of the country; If the vessel calls an additional internal port prior to or after bunkering the prices will be adjusted substantially higher to cover the applicable duty;

11.03    **Notice of the price**  The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery.  In certain circumstances the Company will give notice of the Price in instalments.  Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Company.  Notice of the Price may at the Company s option be provided by invoice sent by post or telex or as otherwise provided herein or as agreed.

11.04    **Proof of delivery**  The Buyer or his representative should attend Delivery and obtain at that time all outstanding information relating to Delivery including the exact quantities and precise specification of Product

delivered.  Unless otherwise requested by the Buyer prior to despatch by the  Company of the Bunker Nomination the Company shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel.  It is expressly agreed that the furnishing by the Company of proof of Delivery is not a pre-requisite to payment of the Price.

12.01   **PAYMENT**  In most cases special payment terms will have been agreed and will be set  out in the Bunker Nomination.  Each of the following terms apply unless the Bunker Nomination otherwise provides:

1. Payment of  the Price will be made in United States dollars to the bank and account specified in the Bunker Nomination in full without deduction for any reason whatsoever so as to ensure that the Company receives  value for the payment in cleared funds on or before the Due Date or such earlier date in the case of Clause 12.01.8.
2. The Due Date is as provided in the Bunker Nomination or in default the date of Delivery.
3. Timely payment is of the essence of the Agreement.
4. Late payment will attract a financial charge of 2% per calendar month on the outstanding sum calculated on a daily basis from the Due Date until receipt by the Company of sufficient cleared funds in full payment of any costs incurred, all interest and the full Price.  Partial Payments are applied firstly towards costs, secondly towards interest and thirdly towards the Price.  Accrued financial charges will be added to and become part of the outstanding sum at monthly intervals.  In the event that the contractually agreed rate of financial charge specified in the Agreement is in excess of that permitted by relevant law there shall be substituted the maximum rate so permitted.
5. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account  specified in the Bunker Nomination and/or Bunker Invoice.  All bank and other charges, if any, incurred in effecting remittance will be for the account of the Buyer Advice of remittance including identifying references should always be given to the Company.
6. Payments received by the Company from or on the behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of :
    1. accrued financial and other charges in respect of transactions for which the principal sum has been previously paid.
    2. accrued financial and other charges arising from all other transactions.
    3. any principal sum or sums due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.
    4. any principal sum which the Company knows or reasonably expects will fall due at a future date.
7. The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.
8. If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any principal manager, subsidiary , parent, associate or affiliate thereof should give the Company reasonable cause for concern, the Company may without prejudice to all other rights and remedies which it may have give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding shall thereupon fall due for immediate payment irrespective of any other Due Date previously agreed. Default interest shall incur from the date of the relevant notice being tendered to the Buyer.
9. In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up the Company may forthwith terminate any Agreement with the Buyer and/or all credit arrangements in the lines of the Clause 12.01.8 above.
10. The full legal and other costs and expenses incurred by the Company including those of the Company s own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for security or enforcement as well as preaction costs shall be for the Buyer s account, payable by the Buyer and shall for all purposes form part of the Price due from the Buyer to the Company for Product supplied.

13.00   **CLAIMS, DISPUTES AND PRECAUTIONS**

13.01   **Time Limits:**  Because the Company is frequently placed under strict time limits by its suppliers for the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers.  In consequence of the Company s strict time limits, Buyers should ensure that they maintain their own equally strict internal checking and reporting procedures.  It must be clearly understood that the Company will not relax its time-limits in any circumstances.

13.02   **Notification:**  Written notice of any claim or potential claim must be given to the Company within the time limit specified.  It is the Buyer s responsibility to ensure that notice is received by the Company whose confirmation of receipt should always be sought.  Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the Delivery.

13.03   **Sufficiency of Information:**     To enable the Company to investigate and pursue a claim the notice must be give sufficient information for the Company to be able to identify the relevant transaction , the nature of the complaint and the loss or damage alleged.  Any notice which does not give such sufficient information will not be

valid.  For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.04   **Categories:**       Claims fall into 3 categories:
1. Quantity claims and disputes
2. Quality claims and disputes
3. Other claims and disputes

1.01   **Quantity Claims and Disputes:** These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an Officer of the Vessel s crew or other senior representative of the Buyer.

1.02   For bulk deliveries delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn.  Flow meters must be checked for seals, correct settings and calibration and general condition.  All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load.  The Delivery must be supervised at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping.  Any discrepancies must be recorded on the Physical Supplier s delivery receipt.  Unless these procedures are followed it is nearly always impossible for a claim to be substantiated.  The Company regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

1.03   The Company will not accept a claim for short delivery based upon figures obtained by measuring Product in the Vessel s tank.

1.04   The time limit for receipt by the Company of notice of a quantity dispute is 7 (seven) days from the date of Delivery or such shorter period as is specified in the Bunker Nomination.

2.01   **Quality Claims and Disputes.** It is the Buyer s responsibility to ensure that the products tendered for Delivery are those which are required by the Vessel and are delivered into the correct tanks.

2.02   Two representative samples of every consignment  and load of the Delivery must be taken as Delivery proceeds.  The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other senior representative of the Buyer.  One set samples must be retained by the Buyer, the other by the Physical Supplier.

2.03   As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier s delivery receipt before signing and stamping.

2.04   In the event of the Buyer having grounds to believe that the Product supplied does not accord  ith the relevant description in the Bunker Nomination or is defective the Buyer shall immediately:
1. take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product.
2. give notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel s position destination and ETA; the quantities and locations of all bunkers on board the vessel, the rate and quantity of consumption since Delivery and the location immediately prior to consumption of bunkers consumed; for each of the three proceeding deliveries to the vessel, the quantity, quality and specification of Product supplied, the port and date of supply and the name of the supplier;
3. inform the Company of the whereabouts of the Buyer s set of samples.

2.05   It is a pre-condition of the Company being prepared to consider any quality claim and of the Company being liable therefore, that at the time notice is given, the Buyer has retained its complete set of sealed samples and is prepared to and has them analysed by a reputable independent testing laboratory, approved in writing by the Company, in accordance with established procedures and in the presence of a representative of the Company.  In the event that the Buyer is unable or unwilling to produce its samples for analysis within 28 days of a request from the Company so to do the Company may proceed to have the Physical Supplier s samples analysed and the results of such analysis shall be binding upon the parties hereto.  However, if the analysis of any other samples is expressly agreed between the parties, the results thereof shall be those binding.

2.06   If it is alleged that any equipment or machinery has been damaged by defective Product full details must be given  to the Company at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Company or its representative.

2.07   The time limit for receipt by the Company of notice of a quality claim is 7(seven) days from the date of Delivery or such shorter period as is specified in the Bunker Nomination.

3.01   **Other Claims and Disputes:** Notice of all other claims, specifically excluding any and all claims relating to or associated with those relating to matters of quantity or quality which are subject to the time limits set out in sub-clauses 13.04.1 and 13.04.2 above, should be given to the Company as soon as reasonably possible and in any event  no later than 28 days after Delivery.  If the Bunker Nomination provides for a shorter period such shorter period shall apply.

4.01   **Summary of Time Limits:**
Quantity claims and disputes 7 days
Quality claims and disputes  7 days
Other claims and disputes 28 days

all subject to the provision of shorter time limits in the Bunker Nomination.

14.00   **WAIVER**   The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement.   In particular, the granting by the Company of any additional time to make payment or the waiving or reducing of any financial or other charge shall not prevent the Company at any time thereafter from relying upon its strict contractual rights.

15.00   **INDEMNITY**   The Buyer hereby indemnifies the Company in respect of all damage or injury occurring to any person or to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extent that the same shall have been occasioned by the negligence or default of the Buyer, his servants or agents or any third party in the course of performance of or arising out of the Agreement.

16.00   **LIABILITY**   To the extent permitted by Law the Company shall not be liable to the Buyer for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Company, its servants, agents or sub-contractors.

17.00   **COMPENSATION**   Notwithstanding the foregoing, in the event that the Company is found to be liable to the Buyer , the total amount payable by way of compensation other than in respect of personal injury or death shall not exceed the price charged to the Buyer for Product supplied under the Agreement.   It is a pre-condition to the payment of any compensation by the Company that all sums standing due to the Company from the Buyer are first paid and settled.

18.00   **INSURANCE**   The Buyer is responsible for effecting and maintaining in force adequate insurances which will fully protect the Buyer, the Company and all third parties from all risks, hazards and perils associated with or arising from the Agreement and Delivery.

19.00   **LICENCES PERMITS AND APROVALS**   The Buyer is responsible for obtaining all necessary permits, licences and approvals required to enable both parties to execute all of their obligations under the Agreement.

20.00   **NO WARRANTY**
20.01   The Product shall be within the specifications generally offered to the Company s customers at the time and place of delivery.
20.02   The Company makes no warranties of quality (other than what is expressly mentioned herein above) fitness or merchantability with respect to any of the Products and any implied warranties or conditions of whatsoever nature (statutory included) are expressly excluded.
20.03   The Buyer shall have the sole responsibility to select suitable products for his vessel.

21.00   **APPLICABLE LAW**   The Law governing any and all disputes and all other matters/issues between the Company and the Buyer and/or the Vessel shall be the U.S.A. Law. Such Law shall also govern, but without limitation, all issues concerning the enforcement and the application and status of maritime liens.

 Worldwide Marine Oil Suppliers

# INVOICE

15 September, 2008

M/V   GO PUBLIC
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR    INDUSTRIAL CARRIERS INC.
AND/OR    GO PUBLIC MTME/ANTARES SHIPMGMT/RIGOS M
1, BAZARNAYA ST.,ODESSA,
65014    UKRAINE

## INVOICE DETAILS

| INVOICE No. 3465-254/2008 | BUYER AS ABOVE | M/V GO PUBLIC | PORT SWINOUJSCIE | DELIVERY DATE 15 September, 2008 |
|---|---|---|---|---|
| GRADE IFO-380 | QUANTITY 100,000 | UNIT MT | PRICE 615,000 | AMOUNT USD 61.500,00 |

|  |  |  |
|---|---|---|
|  | TOTAL:    USD | 61.500,00 |

**Due Date:**    14 October, 2008        (Credit Terms:  30 DAYS    )        E. & O.E.

An interest charge of 2,00% pro rata per month will be levied for overdue payment.
Please remit by telegraphic transfer free of all bank charges to:

BENEFICIARY BANK:
J.P. MORGAN CHASE BANK N.A(HONG KONG)
SWIFT CODE : CHASHKHH
ACCOUNT NUMBER: 6872254021
IN FAVOUR OF:   PRAXIS ENERGY AGENTS

PRAXIS ENERGY AGENTS - P.O BOX 146, WICKHAMS CAY, ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS - REG.# 267664

SHIP SERVICE®
GRUPA ORLEN

SHIP SERVICE S.A.
ul. Wałowa 11
00-851 Warszawa - POLAND
tel. +48 91 431 8600/68
fax +48 91 8506/69
REGON 010337580
VAT ID: PL-8010337492

Port: SWINOUJSCIE
Name / Nazwa: GO PUBLIC
IMO Number / Numer IMO: 9045800
Delivery Date / Data dostawy: 2008 03 15
BDN No. / Nr: TWO7 00268 x ABX 2008
VESSEL'S FLAG / BANDERA STATKU: BAHAMA
☒ JEDNOSTKA JEST WYKORZYSTYWANA DO ŻEGLUGI PO WODACH MORSKICH

## BUNKER DELIVERY NOTE / DOKUMENT DOSTAWY PALIWA (KWIT BUNKROWY)

IFO

Produkt / Paliwo zęza: ☐ MGO ☐ DMA ☐ DMX ☐ MDO ☐ DMB ☐ DMC ☒ IFO 3 80 cSt ☐ MFO (RM G 380)

☐ Delivery Mode / Sposób dostawy   ☒ Barge / Barka   ☐ Truck / Autocysterna

| Ship Name / Nazwa Statku | Mooring Date / Data | Time / Czas |
|---|---|---|
| ROMANA | Commencing / Start: 2008 03 15 | 15:30 |
| | Completion / Zakończenie: 2008 03 15 | 16:10 |

| Density / Gęstość (kg/m³) at 15°C / w 15°C: 0.9740 | Water / Woda: 0.0 | Flash Point: 105° |
| Viscosity / Lepkość: 210 cSt | Sulphur / Siarka: 1.40 | Ash / Popiół: 1% |

☒ By Volume / Objętość

| Quantity / Ilość | | | |
|---|---|---|---|
| Start / Przed: 106,539 | Air / W: 15 | Correction / Korekta: 0.9194 |
| Final / Po: 102,554 | Metric Tonnes / Tony metryczne: | 1000.000 |

## COMPOSITION / REMARKS / UWAGI

| Quantity / Ilość | Density / Gęstość | Remarks / Uwagi |
|---|---|---|
| MFO 180 74.000 | | |
| IFO 380 59.000 | | |

Supply Facility / Wydawca:

Carrier / Przewoźnik:

Bunker Received on Board / Odbiór na burcie:

Signature & Stamp / Podpis i pieczęć

Signature & Stamp / Podpis i pieczęć

Signature & Stamp for the Vessel / Podpis, Dela, Ponpis

Supplier's notes / Uwagi dostawcy:
FOR SUPPLIER'S USE ONLY / WYPEŁNIA DOSTAWCA

out (4) sealed samples were drawn with numbers:
for vessel: AA 27295   AA 27350
for barge: AA 27390   AA 27591

All supplies are subject to Supplier's General Terms & Condition of Sale / Dostawa podlega Ogólnym Warunkom Sprzedaży Dostawcy



Worldwide Marine Oil Suppliers

---

# BUNKER NOMINATION

### 12 September, 2008

**TO: INDUSTRIAL CARRIERS INC.**
**ATTENTION: MR. SERGEY MATVEYENKO**

## CONTRACT NUMBER: 3464-254-gd-AMENDED

ACTING AS CONTRACTUAL SELLERS AND IN ACCORDANCE WITH INSTRUCTIONS RECEIVED BY PURCHASER M/V **GO PUBLIC** AND OWNERS WE HAVE NOMINATED THE FOLLOWING BUNKER STEM:

| | |
|---|---|
| BUYER: | INDUSTRIAL CARRIERS INC. |
| | AND/OR GO PUBLIC MARITIME CO. SA |
| | AND/OR ANTARES SHIPMANAGEMENT SA |
| | AND/OR RIGOS MARINE ENTERPRISES |
| | AND/OR M/V GO PUBLIC |
| | AND/OR MASTER/OWNERS/MANAGERS/OPERATORS |
| SELLER: | PRAXIS ENERGY AGENTS S.A. |
| PHYSICAL SUPPLIER: | SHIP-SERVICE S.A. |
| MOTOR VESSEL: | GO PUBLIC (FLAG: BAHAMAS, IMO#9045900) |
| PORT OF SUPPLY: | SWINOUJSCIE |
| DATE OF DELIVERY: | 14TH  20TH OF SEPTEMBER, 2008 |
| QUANTITY/PRICE: | **550 MTS (IFO-380cSt, RMG-380) AT USD 597.00 / MT** |
| QUANTITY/PRICE: | **20 MTS (DIESEL, DMB, MAX. SULPHUR 1.5%) AT USD 976.00 / MT** |
| TRANSPORTATION: | DELIVERED BY BARGE |
| CALLING COSTS: | --- |
| EXTRA CHARGES: | OVERTIME, TAXES ETC., IF INCURRED. |
| CANCELLATION FEES: | AS PER PHYSICAL SUPPLIER S TERMS AND CONDITIONS, IF APPLICABLE. |
| OBSERVERS: | OPERATIONS TO BE WITNESSED BY THE VESSEL S REPRESENTATIVE. |
| AGENTS: | BALTA SA |
| TERMS OF PAYMENT: | WITHIN THIRTY (30) DAYS FROM DATE OF DELIVERY VIA WIRE TRANSFER UPON PRESENTATION OF INVOICE (FAX) WHEREAS COPY OF D/R WILL BE FORWARDED WHEN WE HAVE RECEIVED THE SAME. |

### SPECIAL (NO OTHER TERMS TO APPLY):

SELLER/SUPPLIER GUARANTEE THAT THE SULPHUR CONTENT OF THE BUNKER SUPPLIED WILL NOT EXCEED 4.5% (M/M) AND SELLER/SUPPLIER MUST NOT FAIL TO PRODUCE A CERTIFICATE 'BUNKER DELIVERY NOTE' TO SHOW THE EXACT SULPHUR CONTENT AND OTHER INFORMATION AS REQUIRED WHICH READ AS FOLLOWING:-

- NAME AND IMO NUMBER OF THE VESSEL
- PORT
- DATE OF COMMENCEMENT OF DELIVERY
- NAME, ADDRESS AND TELEPHONE NUMBER OF BUNKER SUPPLIER
- PRODUCT NAME(S)
- QUANTITY (METRIC TONS)
- DENSITY AT 15 DEGREE CENTIGRADE (KG/M3)
- SULPHUR CONTENT (%M/M)
- A DECLARATION SIGNED AND CERTIFIED BY THE BUNKER SUPPLIER'S
  REPRESENTATIVE THAT THE BUNKER SUPPLIED IS IN CONFORMITY WITH

| One Stamford Plaza, Suite 10-15 | 28 Vouliagmenis Avenue | The Gateway East, Suite 23-05 |
|---|---|---|
| 263 Tresser Blvd, Stamford, CT 06901, USA | 166 74 Glyfada, Athens, Greece | 152 Beach Road, Singapore 189721 |
| Telephone: +(1) 203-357 9700 | Telephone: +(30) 210-969 2100 | Telephone: +(65) 6403 3500 |
| Facsimile: +(1) 203-357 0780 | Facsimile: +(30) 210-969 2150 | Facsimile: +(65) 6403 3599 |
| Email: newyork@praxisenergyagents.com | Email: athens@praxisenergyagents.com | Email: singapore@praxisenergyagents.com |

                                            Worldwide Marine Oil Suppliers

# BUNKER NOMINATION

## 12 September, 2008

REG 14(1) OR (4)(A) AND REG 18(1) OF THE ANNEX VI OF MARPOL
73/78.

1. BUYER HAVE THE RIGHT TO CONDUCT SAMPLING AND FURTHER ANALYSIS OF
   SAMPLES TAKEN FROM THE BARGE (SELLER TO ASSIST BUYER WHERE APPLICABLE
   WITH ARRANGING OF SAME) BEFORE OR DURING THE SUPPLY AND IF SUCH ANALYSIS
   SHOWS RESULTS WHICH ARE NOT IN LINE WITH THE QUALITY AGREED, BUYER HAVE
   THE OPTION TO CANCEL SUPPLY, WHILE CANCELLATION CHARGES COULD BE
   CHARGED, BUT ONLY IF THEY ARE APPLICABLE BY THE PHYSICAL.

2. THE SELLER/SUPPLIER DOES NOT HAVE A LIEN AGAINST THE VESSEL IN RESPECT OF
   THE VALUE OF THE BUNKERS, PROVIDED ALL FUNDS FOR BUNKERS RECEIVED BY
   SELLER.

3. BUYER HAS THE OPTION TO APPOINT AN INDEPENDENT SURVEYOR, MUTUALLY
   AGREEABLE BY BOTH PARTIES, TO VERIFY FINAL QUANTITIES OF BUNKERS SUPPLIED
   TO THE VESSEL AS WELL AS QUALITY. IN SUCH A CASE QUANTITY AND QUALITY OF
   BUNKERS DETERMINED BY SURVEYOR ARE TO BE MUTUALLY ACCEPTED BY BOTH
   PARTIES.

4. IN CASE OF ANY DISPUTE REGARDING QUALITY OF A PRODUCT SUPPLIED
   SELLER/SUPPLIER AND BUYER TO APPOINT MUTUALLY AGREEABLE BY BOTH PARTIES
   RECOGNIZABLE SURVEYOR TO PERFORM TEST ANALYSIS AND IF SUCH ANALYSIS
   SHOWS OFF-SPECIFICATION BUNKERS SELLER/SUPPLIER IS TO BEAR ALL LIABILITIES
   WHICH MAY ARISE THERE FROM.

5. BUNKER DELIVERY RECEIPT FOR EVENTUAL QUANTITIES SUPPLIED IS TO BE ISSUED
   AND SIGNED AFTER COMPLETION OF BUNKERING ONLY.

6. SPECIFICATION OF PRODUCT(S) SUPPLIED ARE TO BE IN ACCORDANCE WITH BUYER'S
   REQUESTED REQUIREMENTS, IF SPECIFIED.

7. ANY PRODUCT SUPPLIED IS TO CONFORM TO ISO 8217:2005 (E), NO OTHER
   SPECIFICATION IS TO APPLY. IN CASE OF QUALITY DISPUTE, BARGE'S AND VESSEL'S
   RETAINED SAMPLE (DULY WITNESSED/SIGNED BY VESSEL'S REPRESENTATIVE) SHALL
   BE THE SAMPLE ADMISSIBLE FOR ANALYSIS TO DETERMINE QUALITY OF PRODUCT(S)
   SUPPLIED.

8. SELLER/SUPPLIER GUARANTEE THAT BARGE'S STAFF WILL ALLOW TO VESSEL'S
   STAFF TO PERFORM MEASUREMENTS IN ALL BARGE'S TANKS (INCLUDING TANKS NOT
   FOR SUPPLY AND VOID SPACES) BEFORE AND AFTER SUPPLY. SUPPLIER
   GUARANTEES THAT CALIBRATION TABLES (INCLUDING TABLES OF ADJUSTMENTS FOR
   TRIM) FOR ALL BARGE'S TANKS ARE AVAILABLE ON BARGE.

9. ANY DELAYS CAUSED BY FAULT OF SUPPLYING BARGE ARE TO BE AT FULL
   RESPONSIBILITY OF SELLER/SUPPLIER.

10. THE SELLER HEREBY CONFIRMS THAT THERE IS NO INTERMEDIARY TRADER(S)
    BETWEEN SELLER AND PHYSICAL SUPPLIERS AND THAT SELLER WILL BE REMITTING
    FUNDS FOR BUNKERING DIRECTLY TO BANK ACCOUNT OF PHYSICAL SUPPLIER.

One Stamford Plaza, Suite 10-12
203 Tresser Blvd, Stamford, CT 06901. USA
Telephone: +(1) 203-357 0700
Facsimile: +(1) 203-357 0760
Email: navyork@praxisenergyagents.com

20 Voulagmenis Avenue
166 74 Glyfada, Athens, Greece
Telephone: +(30) 210-969 3100
Facsimile: +(30) 210-969 3160
Email: athens@praxisenergyagents.com

The Gateway East, Suite 33-05
152 Beach Road, Singapore 189721
Telephone: +(65) 6400 3500
Facsimile: +(65) 6400 3599
Email: singapore@praxisenergyagents.com

 **PRAXIS** energy agents

**Worldwide Marine Oil Suppliers**

# BUNKER NOMINATION

## 12 September, 2008

11. NOTWITHSTANDING ANY OTHER PROVISION IN THE BUNKER SUPPLY AGREEMENT, THE SELLER/SUPPLIER HEREBY WARRANTS THE FOLLOWING:

12. ALL BUNKERS SUPPLIED SHALL COMPLY WITH THE QUALITY REQUIREMENTS OF MARPOL ANNEX VI;

13. THE VESSEL SHALL BE PROVIDED WITH A DELIVERY NOTE IN ACCORDANCE WITH AND CONTAINING THE MINIMUM INFORMATION REQUIRED BY MARPOL ANNEX VI;

14. THE VESSEL WILL BE PROVIDED WITH A REPRESENTATIVE SAMPLE OF THE BUNKERS OIL DELIVERED IN ACCORDANCE WITH MARPOL ANNEX VI AND THE GUIDELINES SET OUT IN MEPC96(47).

15. THE SELLER TO FURNISH LIEN WAIVER FROM SUPPLIER WITHIN 30 DAYS AFTER SUPPLY PROVIDED ALL FUNDS WILL BE RECEIVED BY SELLER FROM BUYER.

16. IN CASE OF ANY DISPUTE SAME TO BE REFERRED TO ENGLISH LAW AND RESOLVED IN ACCORDANCE WITH LMAA SMALL CLAIMS PROCEDURE.

17. **ANY COMPLAINT AS TO THE QUALITY OF BUNKERS IS TO BE MADE BY THE BUYER TO THE SELLER/SUPPLIER WITHIN 30 DAYS AFTER DATE OF DELIVERY. ANY CLAIM AS TO THE QUANTITY IS TO BE MADE BY THE BUYER TO THE SELLER WITHIN 7 DAYS AFTER DATE OF DELIVERY.**

18. BUYERS SHALL CONFIRM THEIR AGREEMENT TO ABV SPECIAL TERMS OF DELIVERY, ANY ERRORS OR OMISSIONS IN THE ABOVE SHOULD BE REPORTED IMMEDIATELY.

THE DETAILS OF THIS NOMINATION ARE BEING SENT TO BOTH END USER AND SUPPLIER. ANY ERRORS OR OMISSIONS SHOULD BE REPORTED BY EITHER PARTY IMMEDIATELY.

One Stamford Plaza, Suite 10-15
263 Tresser Blvd. Stamford, CT 06901, USA
Telephone: +(1) 203-357 9780
Facsimile +(1) 203-357 9780
Email: newyork@praxisenergyagents.com

28 Vouliagmenis Avenue
166 74 Glyfada, Athens, Greece
Telephone: +(30) 210-969 2100
Facsimile +(30) 210-969 2160
Email: athens@praxisenergyagents.com

The Gateway East, Suite 33-65
152 Beach Road, Singapore 189721
Telephone: +(65) 6403 3500
Facsimile: +(65) 6403 3590
Email: singapore@praxisenergyagents.com

   Worldwide Marine Oil Suppliers

**STANDARD TERMS AND CONDITIONS FOR THE SALE OF MARINE BUNKER FUELS AND LUBRICANTS**

### 1 JUNE 2002

1.00    **INTRODUCTORY**    These terms and conditions are the general standard terms and conditions under which Praxis Energy Agents S.A. of  British Virgin Islands (the Company) is prepared to enter agreement (the Agreement) with another party (the Buyer) to supply to the Buyer marine bunker fuels, and/or lubricants and/or other products.  These terms and conditions may be referred to as  Praxis Standard Terms and Conditions .  Each Agreement will be as specifically negotiated between the Company and the Buyer as evidenced by the Company s confirmation of stem  facsimile message (the Bunker Nomination) and in the event of any conflict between these terms and conditions and the terms of the Bunker Nomination the terms of the latter shall prevail.

2.00    **DEFINITIONS**
2.01    **Agreement** As defined in Clause 1.01
2.02    **Basic Cost**  The basic cost of Product calculated by multiplying the Unit Price by the quantity of Product delivered to the Vessel.
2.03    **Company**  Includes in addition to the Company itself, its servants, agents, assigns, sub contractors, and any and all other persons acting under the Company s instructions in fulfillment compliance or observance of this Agreement  unless the context otherwise requires.
2.04    **Bunker Nomination**  As defined in clause 1.01.  (The term facsimile also to be read as Telex throughout)
2.05    **Buyer (Purchaser)**  The party so described in the Bunker Nomination together with any agent , principal, associate , manager, partner, servant, parent, subsidiary, owner, or shareholder thereof.
2.06    **Delivery** As defined in Clause 8.00
2.07    **Due Date**  The date specified in the Bunker Nomination for payment of the Price and all other fees, costs, charges and like items.
2.08    **Gender, Singular and Plural**  Unless the context otherwise requires, all references in the Agreement to one gender shall be deemed to include all others and references to the singular shall be deemed to include the plural vice versa.
2.09    **Physical Supplier**  The person who physically supplies the Product to the Vessel together with that person s servants, agents, successors, sub-contractors and assigns.  The Physical Supplier may be the Company or any other person.
2.10    **Port of Supply**  The port or other readily identifiable geographical location specified in the Bunker Nomination wherein or adjacent to which is the Point of Delivery.
2.11    **Point of Delivery**  The precise place at which Delivery is to be effected as provided  in the Bunker Nomination or as thereafter confirmed, advised or revised by the Company or the Physical Supplier being a berth, mooring, anchorage or other point within, adjacent to or associated with the Port of Supply.
2.12    **Price** As defined in Clause 11.00
2.13    **Product**  The fuels, oils, lubricants, goods, items, equipment  and materials of whatever type and description as specified in the Bunker Nomination, the subject of the Agreement.
2.14    **Unit Price**  The rate of cost in United States Dollars (or such other currency specified in the Bunker Nomination) per metric tonne (or such other unit of measurement specified in the Bunker Nomination) or Product as specified in the Bunker Nomination.
2.15    **Motor Vessel** or **Vessel**  The vessel, ship or craft duly nominated to receive Product as specified in the Bunker Nomination.
2.16    **Written, in Writing and Notice**  Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier, telex, facsimile transmission or any other medium which produces a tangible result for the intended recipient.  The communication shall be deemed to have been given and received upon completion of transmission for any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter-post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

3.00    **HEADINGS** The use of headings and explanatory notes is for convenience and elucidation only.  They are not part of the Agreement.

4.00    **ENTIRETY AND VALIDITY**  These terms and conditions together with the Bunker Nomination constitute the entire Agreement.  No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Company.  If any provision of the Agreement shall to any extent  be invalid or unenforceable  the remainder of the Agreement shall not be affected thereby.

5.00    **FORCE MAJEURE**  The Company shall not be liable for any failure to fulfil any term or condition of the Agreement if fulfilment has been delayed, hindered or prevented by any circumstances whatsoever which are not within the immediate control of the Company including but without limiting the generality of the foregoing, any strike, lockout or labour dispute or reasonable apprehension thereof, any governmental order, request or restriction, any

limitation restriction or interruption to existing or contemplated sources of supply of Product or the means of supply thereof.

## 6.00   BROKERS AND AGENTS

6.01     Unless the party with whom the Company is corresponding specifically declares to the Company prior to dispatch by the Company of the Bunker Nomination that the party with whom the Company is corresponding is not the Buyer and at the same time provides to the Company the full name and address of the Buyer then the party with whom the Company is corresponding shall be deemed to be the Buyer.

6.02     Without prejudice to the provisions of clause 6.01 in the event that the party with whom the Company is corresponding is an agent of the Buyer then the party with whom the Company is corresponding shall be jointly and severably liable with the Buyer to perform the Buyer s obligations under the Agreement notwithstanding that the party with whom the Company is corresponding purports to contract as a mere agent.

6.03     In any event the Owners and the Managers of the Vessel shall always be responsible jointly and severally with any other liable party.

7.00     **ASSIGNMENT**  The Buyer shall not assign its interest in the Agreement without the prior written approval of the Company. The Company may assign the Agreement and shall thereafter give notice thereof to the Buyer.

## 8.00   DELIVERY

8.01     **Allocation**   If the Company at any time and for any reason, believes that there may be a shortage of Product at the Port of Supply it may allocate its available and anticipated supply of Product among its Buyers in such a manner as it may in its absolute discretion determine.

8.02     **Restrictions**  The Company shall not be required to deliver Product into any of the Vessel s tanks or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for the export of which a Government permit is required and has not been obtained.

8.03     **Means of the Delivery**  Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.

8.04     **Barging**  In the event of delivery by barge, the Buyer shall at its own expense provide a clear and safe berth for the barge(s) alongside the Vessel s receiving lines and shall provide all necessary facilities and assistance required to effect delivery. The Buyer agrees to pay and indemnify the Company against all claims and expenses in respect of any loss, damage or delay caused by the Vessel to any barge and/or its equipment.

8.05     **Connection**  The Buyer shall make connection between the pipelines or delivery hoses and the Vessel s intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the Delivery.  The Buyer is responsible for ensuring that Product  is delivered at a safe rate and pressure and that all equipment utilised therefor is in a safe and satisfactory condition.

8.06     **Title/Retention of Ownership**   Delivery shall be deemed complete when the oil has passed the flange connecting the Physical Supplier s delivery facilities with the receiving facilities provided by the Buyer. However, ownership of the Product  shall pass to the Buyer only after the Price has been received by the Company in full as provided in Clause 12.01. Until such time as the Price  is received in full by the Company the person in possession of the Product delivered shall hold the Product for the Company as a mere bailee.

8.07     **Risk**  The Company s responsibility for Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product leaves the Physical Supplier s fixed depot or wharf  facilities. The Buyer agrees to indemnify without limit the Company in respect of any liability, claim or demand for which the Buyer is liable.

8.08     **Measurement**  The quantity of Product delivered hereunder shall be determined at the Physical Supplier s option by one of such generally recognised methods of measurement as is appropriate in the circumstances.

8.09     **Specification**  The Product to be delivered shall be as specified in the Bunker Nomination and other than as more precisely specified therein shall be of the Company s commercial grades of Product as currently offered generally to its Buyers at the time and the Point of Delivery for marine bunkering or lubrication purposes.  No other warranties, express or implied as to quality or fitness for any purpose, are given or form part of the Agreement.

8.10     **Compatibility and Segregation**  Responsibility for establishing compatibility  of Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.

8.11     **Substitution**   The Company may discharge its obligation to deliver Product as specified in the Bunker Nomination by supplying in substitution  therefor product of a different grade and/or  brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Bunker Nomination.

8.12     **Availability**  Subject to the availability of Product, the availability of facilities at the Port of Supply and Point of Delivery and the customary priority of  mail vessels and tankers, and to the Buyer giving notice in accordance with Clause 8.15, the Company will use its best endeavours to ensure that Product is delivered promptly upon the Vessel s arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence  of the Vessel not being supplied promptly or otherwise being delayed or restrained  for any reason whatsoever.

8.13     **Time**  The Buyer is responsible for ensuring that  the Vessel is ready to receive Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.15.

8.14     **Delay**  In the event that the Vessel s arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company. The Buyer should also ensure that the Vessel s agent at the Port of Supply  is similarly informed and that the agent advises the  Physical Supplier accordingly.  At the Buyer s request the

Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel s delayed arrival.

8.15     **Notice and Other Delivery Requirements**   The Buyer must give not less than 72 hours notice (excluding Sabbaths, holidays and other non-working days at the Port of Supply) of the Vessel s readiness  to receive Product to the Company and to the Physical Supplier.  Notice must be given during the Company s normal business hours (Monday to Friday inclusive, 0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  Furthermore it is in all circumstances and on all occasions the responsibility  and duty of the Buyer to ascertain and  where appropriate to comply with:

    1. the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel s time of arrival at the Point of Delivery.
    2. the exact location of the Point of Delivery
    3. any particular requirements to enable Delivery to be effected as efficaciously as possible

The Buyer is advised to instruct its agent at the Port of Supply to liaise with the Physical Supplier so as to ensure compliance with these provisions.

8.16     **Information**  in response to a specific request for information from the Buyer in respect of the Point of Delivery  the Company will use its best endeavours to obtain or provide the information requested.  Whilst every care will be taken to ensure that  such information is accurate and up-to-date it is  furnished on the strict understanding that It is  not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

8.17     **Environmental Protection**  Without prejudice to Clause 8.07 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product.  Any action so taken shall be on behalf of and at the expense of the Buyer.

9.00     **CANCELLATION AND BREACH** In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product the Company shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit. The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate.  So however that the provisions of Clauses 15.01,16.01 and 17.01 shall survive the determination of the Agreement in any event.

    10.0     **LIENS** Where Product is supplied to a vessel, in addition to any other security, the Agreement is entered into and Product is supplied upon the faith and credit of the Vessel.  It is agreed and acknowledged that a maritime lien over the Vessel is thereby created for the Price of Product supplied and that the Company in agreeing to deliver Product to the Vessel does so relying upon the faith and credit of the Vessel.  The Buyer if not the owner of the Vessel hereby expressly warrants that he has the authority of the owner to pledge the Vessel s credit as aforesaid and that he has given notice of the provisions of this Clause to the owner.  The Company shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel.

11.00    **THE PRICE**

11.01    **Unit Price**  Where in the Bunker Nomination the Unit Price is stated to be not subject to variation the Unit Price will, subject to clause 8.14, not be varied.  In all other cases having agreed the Unit Price of the Product the Company will endeavour to refrain from making any increase.  However , the cost of marine bunkering products is volatile and the Company therefore reserves the right to increase the Unit Price at any time before delivery.  Notice of the increase will be given during the Company s normal business hours (Monday to Friday inclusive, 0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement.  If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed  to have agreed to the revised Unit price and the Agreement so revised shall remain in full force and effect.

11.02    **Further Costs**  In addition to the Basic Cost  of the Product the Buyer agrees to pay for any charges raised in respect of taxes, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues  and any and all other like costs and expenses incurred by or charged to the Company.  Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

The contracted prices are duty free only on the basis that the nominated vessel previous and next port of call are outside of the country; If the vessel calls an additional internal port prior to or after bunkering the prices will be adjusted substantially higher to cover the applicable duty;

11.03    **Notice of the price**   The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery.  In certain circumstances the Company will give notice of the Price in instalments.  Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Company.  Notice of the Price may at the Company s option be provided by invoice sent by post or telex or as otherwise provided herein or as agreed.

11.04    **Proof of delivery**  The Buyer or his representative should attend Delivery and obtain at that time all outstanding information relating to Delivery including the exact quantities and precise specification of Product

delivered. Unless otherwise requested by the Buyer prior to despatch by the Company of the Bunker Nomination the Company shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel. It is expressly agreed that the furnishing by the Company of proof of Delivery is not a pre-requisite to payment of the Price.

12.01   **PAYMENT**   In most cases special payment terms will have been agreed and will be set out in the Bunker Nomination. Each of the following terms apply unless the Bunker Nomination otherwise provides:

1. Payment of the Price will be made in United States dollars to the bank and account specified in the Bunker Nomination in full without deduction for any reason whatsoever so as to ensure that the Company receives value for the payment in cleared funds on or before the Due Date or such earlier date in the case of Clause 12.01.8.
2. The Due Date is as provided in the Bunker Nomination or in default the date of Delivery.
3. Timely payment is of the essence of the Agreement.
4. Late payment will attract a financial charge of 2% per calendar month on the outstanding sum calculated on a daily basis from the Due Date until receipt by the Company of sufficient cleared funds in full payment of any costs incurred, all interest and the full Price. Partial Payments are applied firstly towards costs, secondly towards interest and thirdly towards the Price. Accrued financial charges will be added to and become part of the outstanding sum at monthly intervals. In the event that the contractually agreed rate of financial charge specified in the Agreement is in excess of that permitted by relevant law there shall be substituted the maximum rate so permitted.
5. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account specified in the Bunker Nomination and/or Bunker Invoice. All bank and other charges, if any, incurred in effecting remittance will be for the account of the Buyer Advice of remittance including identifying references should always be given to the Company.
6. Payments received by the Company from or on the behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of :
   1. accrued financial and other charges in respect of transactions for which the principal sum has been previously paid.
   2. accrued financial and other charges arising from all other transactions.
   3. any principal sum or sums due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.
   4. any principal sum which the Company knows or reasonably expects will fall due at a future date.
7. The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.
8. If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any principal manager, subsidiary , parent, associate or affiliate thereof should give the Company reasonable cause for concern, the Company may without prejudice to all other rights and remedies which it may have give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding shall thereupon fall due for immediate payment irrespective of any other Due Date previously agreed. Default interest shall incur from the date of the relevant notice being tendered to the Buyer.
9. In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up the Company may forthwith terminate any Agreement with the Buyer and/or all credit arrangements in the lines of the Clause 12.01.8 above.
10. The full legal and other costs and expenses incurred by the Company including those of the Company s own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for security or enforcement as well as preaction costs shall be for the Buyer s account, payable by the Buyer and shall for all purposes form part of the Price due from the Buyer to the Company for Product supplied.

13.00   **CLAIMS, DISPUTES AND PRECAUTIONS**
13.01   **Time Limits:** Because the Company is frequently placed under strict time limits by its suppliers for the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers. In consequence of the Company s strict time limits, Buyers should ensure that they maintain their own equally strict internal checking and reporting procedures. It must be clearly understood that the Company will not relax its time-limits in any circumstances.
13.02   **Notification:** Written notice of any claim or potential claim must be given to the Company within the time limit specified. It is the Buyer s responsibility to ensure that notice is received by the Company whose confirmation of receipt should always be sought. Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the Delivery.
13.03   **Sufficiency of Information:**   To enable the Company to investigate and pursue a claim the notice must be give sufficient information for the Company to be able to identify the relevant transaction , the nature of the complaint and the loss or damage alleged. Any notice which does not give such sufficient information will not be

valid. For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.04   **Categories:**      Claims fall into 3 categories:
1. Quantity claims and disputes
2. Quality claims and disputes
3. Other claims and disputes

1.01      **Quantity Claims and Disputes:** These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an Officer of the Vessel s crew or other senior representative of the Buyer.

1.02      For bulk deliveries delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn. Flow meters must be checked for seals, correct settings and calibration and general condition. All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load. The Delivery must be supervised at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping. Any discrepancies must be recorded on the Physical Supplier s delivery receipt. Unless these procedures are followed it is nearly always impossible for a claim to be substantiated. The Company regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

1.03      The Company will not accept a claim for short delivery based upon figures obtained by measuring Product in the Vessel s tank.

1.04      The time limit for receipt by the Company of notice of a quantity dispute is 7 (seven) days from the date of Delivery or such shorter period as is specified in the Bunker Nomination.

2.01      **Quality Claims and Disputes.** It is the Buyer s responsibility to ensure that the products tendered for Delivery are those which are required by the Vessel and are delivered into the correct tanks.

2.02      Two representative samples of every consignment  and load of the Delivery must be taken as Delivery proceeds. The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other senior representative of the Buyer. One set samples must be retained by the Buyer, the other by the Physical Supplier.

2.03      As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier s delivery receipt before signing and stamping.

2.04      In the event of the Buyer having grounds to believe that the Product supplied does not accord  ith the relevant description in the Bunker Nomination or is defective the Buyer shall immediately:

1. take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product.
2. give notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel s position destination and ETA; the quantities and locations of all bunkers on board the vessel, the rate and quantity of consumption since Delivery and the location immediately prior to consumption of bunkers consumed; for each of the three proceeding deliveries to the vessel, the quantity, quality and specification of Product supplied, the port and date of supply and the name of the supplier;
3. inform the Company of the whereabouts of the Buyer s set of samples.

2.05      It is a pre-condition of the Company being prepared to consider any quality claim and of the Company being liable therefore, that at the time notice is given, the Buyer has retained its complete set of sealed samples and is prepared to and has them analysed by a reputable independent testing laboratory, approved in writing by the Company, in accordance with established procedures and in the presence of a representative of the Company. In the event that the Buyer is unable or unwilling to produce its samples for analysis within 28 days of a request from the Company so to do the Company may proceed to have the Physical Supplier s samples analysed and the results of such analysis shall be binding upon the parties hereto. However, if the analysis of any other samples is expressly agreed between the parties, the results thereof shall be those binding.

2.06      If it is alleged that any equipment or machinery has been damaged by defective Product full details must be given  to the Company at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Company or its representative.

2.07      The time limit for receipt by the Company of notice of a quality claim is 7(seven) days from the date of Delivery or such shorter period as is specified in the Bunker Nomination.

3.01      **Other Claims and Disputes:** Notice of all other claims, specifically excluding any and all claims relating to or associated with those relating to matters of quantity or quality which are subject to the time limits set out in sub-clauses 13.04.1 and 13.04.2 above, should be given to the Company as soon as reasonably possible and in any event  no later than 28 days after Delivery. If the Bunker Nomination provides for a shorter period such shorter period shall apply.

4.01      **Summary of Time Limits:**
Quantity claims and disputes 7 days
Quality claims and disputes  7 days
Other claims and disputes 28 days
all subject to the provision of shorter time limits in the Bunker Nomination.

14.00   **WAIVER**   The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement.  In particular, the granting by the Company of any additional time to make payment or the waiving or reducing of any financial or other charge shall not prevent the Company at any time thereafter from relying upon its strict contractual rights.

15.00   **INDEMNITY**   The Buyer hereby indemnifies the Company in respect of all damage or injury occurring to any person or to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extent that the same shall have been occasioned by the negligence or default of the Buyer, his servants or agents or any third party in the course of  performance of or arising out of the Agreement.

16.00   **LIABILITY**    To the extent permitted by Law the Company shall not be liable to the Buyer for any loss or damage including loss of profit or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Company, its servants, agents or sub-contractors.

17.00   **COMPENSATION**  Notwithstanding  the foregoing, in the event that the Company is found to be liable to the Buyer , the total amount payable by way of compensation other than in respect of personal injury or death shall not exceed the price charged to the Buyer for Product supplied under the Agreement.   It is a pre-condition to the payment of any compensation by the Company that all sums standing due to the Company from the Buyer are first paid and settled.

18.00   **INSURANCE**   The Buyer is responsible for effecting and maintaining in force adequate insurances  which will fully protect the Buyer, the Company and all third parties from all risks, hazards and perils associated with or arising from the Agreement and Delivery.

19.00   **LICENCES PERMITS AND APROVALS**   The Buyer is responsible for obtaining all necessary permits, licences and approvals required to enable both parties to execute all of their obligations under the Agreement.

20.00   **NO WARRANTY**
20.01    The Product shall be within the specifications generally offered to the Company s customers at the time and place of delivery.
20.02    The Company makes no warranties of quality (other than what is expressly mentioned herein above) fitness or merchantability with respect to any of the Products and any implied warranties or conditions of whatsoever nature  (statutory included) are expressly excluded.
20.03    The Buyer shall have the sole responsibility to select suitable products for his vessel.

21.00   **APPLICABLE LAW** The Law governing any and all disputes and all other matters/issues between the Company and the Buyer and/or the Vessel shall be the U.S.A. Law. Such Law shall also govern, but without limitation, all issues concerning the enforcement and the application and status of maritime liens.



Worldwide Marine Oil Suppliers

# INVOICE

15 September, 2008

M/V   GO PUBLIC
AND/OR MASTER AND/OR OWNERS
AND/OR MANAGERS AND/OR OPERATORS
AND/OR    INDUSTRIAL CARRIERS INC.
AND/OR    GO PUBLIC MTME/ANTARES SHIPMGMT/RIGOS M
1, BAZARNAYA ST ,ODESSA,
65014    UKRAINE

## INVOICE DETAILS

| INVOICE No. 3464-254/2008 | BUYER AS ABOVE | M/V GO PUBLIC | PORT SWINOUJSCIE | DELIVERY DATE 15 September, 2008 |
|---|---|---|---|---|

| GRADE | QUANTITY | UNIT | PRICE | AMOUNT USD |
|---|---|---|---|---|
| IFO-380 | 550,173 | MT | 597,000 | 328.453,28 |
| DIESEL OIL ( DMB) | 20,000 | MT | 976,000 | 19.520,00 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | TOTAL:   USD | | 347.973,28 |

**Due Date:**    14 October, 2008        (Credit Terms:  30 DAYS    )           E. & O.E.

An interest charge of 2,00% pro rata per month will be levied for overdue payment.
Please remit by telegraphic transfer free of all bank charges to:

BENEFICIARY BANK:
J.P. MORGAN CHASE BANK N.A(HONG KONG)
SWIFT CODE : CHASHKHH
ACCOUNT NUMBER: 6872254021
IN FAVOUR OF:   PRAXIS ENERGY AGENTS

PRAXIS ENERGY AGENTS - P.O.BOX 146, WICKHAMS CAY, ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS - REG.# 267564

**SHIP SERVICE**
GRUPA OLLEN

SHIP SERVICE S.A.
ul. Wielspin 21
00-950 Warszawa-POLAND
tel. +48 91 331 85 85
fax +48 91 331 85 85
REGON 810318440
VAT ID: 8510307409

SWINOUJSCIE

CO PUBLIC

**BUNKER DELIVERY NOTE / DOKUMENT DOSTAWY PALIWA (KWIT BUNKROWY)**

VESSELS FLAG / BANDERA STATKU ___ BAHAMA ___

[ ] MGO / DMA DMX   [ ] MDO / DMB DMC   [X] IFO3,5 O 3SL   [ ] MFO (RMG 380)

FOR SUPPLIER'S USE ONLY / WYPELNIA DOSTAWCA

Four (4) sealed samples were drawn with numbers:

for vessel: AA 273 86   AA 273 82

for barge: AA 273 88   AA 27 383

All supplies are subject to Supplier's General Terms & Condition of Sale / Dostawa podlega Ogólnym Warunkom Sprzedaży Dostawy

SHIP - SERVICE
GRUPA ORLEN

SWINOUJSCIE

BUNKER DELIVERY NOTE / DOKUMENT DOSTAWY PALIWA (KWIT BUNKROWY)

GO PUBLIC

Supplier is hereby advised that received for, and/or ordered, and/or acknowledged, received and/or ordered solely for the account of Charterers of the M/V "GO PUBLIC" and not for the account of said vessel or her owners.
Accordingly, no lien or other claim against the said vessel can arise therefrom.
All deliveries subject to Supplier's General Terms & Condition of Sale / Dostawa podlega Ogólnym Warunkom Sprzedaży Dostawy

# Exhibit "II"

## Alan Sampson

| | |
|---|---|
| **From:** | Miltos MP. Papangelis [mpapangelis@vplaw.gr] |
| **Sent:** | Thursday, October 09, 2008 11:34 AM |
| **To:** | ici@otenet.gr; greece@industrialcarriers.com; operations@industrialcarriers.com |
| **Subject:** | UNPAID BUNKERS TO PRAXIS ENERGY AGENTS - TOP URGENT |

**Importance:**     High


To: Industrial Carriers Inc.
Attn: Mr. Vladimir Ivanov

Re Unpaid bunkers to Praxis Energy Agents – TOP URGENT

We are lawyers acting for Praxis Energy Agents which, as you very well know, have supplied with bunkers the following vessels (for easy reference we also set out the relevant invoice values):

1. ILENAO – USD 334,769.73
2. GO PUBLIC – USD 347,973.28 and USD 61,500
3. LA DONNA I – USD 347,062.27
4. MARITIME ALLIANCE – USD 518,617.56.

Our clients are concerned by the facts that not only you have failed to pay to them the invoice for ILENAO (see 1 above) which fell due on 08.10.08, but, additionally, earlier today you sent them a message confirming that you are "really facing cash flow problems" and also in a very unclear manner announcing that you are considering settlement of balances "with assignments/dispowners", something which both our clients and ourselves fail to understand.

Whilst our clients fully reserve all their rights, they hereby demand that you, latest by 11:00 a.m. Greek time tomorrow:
   a.  fully pay the invoice of ILENAO in the sum of USD 334,769.73 and
   b.  confirm unconditionally that you will promptly and timely pay all the other invoices per 2, 3 and 4 above.

If you fail to promptly and timely act per a and b above, our clients will be left with no alternative but to take all appropriate and lawful steps in order to safeguard their interests.

It is sincerely hoped that you will react accordingly, meanwhile all our clients' rights are fully reserved.


Thank you and best regards,
Milto N. Papangelis



V & P Law Firm

Piraeus Office: 61-65  Filonos Str. , 185 35 Piraeus, Greece
Telephone: +30 210 4135407, Fax:  +30 210 4135505, email: mail@vplaw.gr
************************************************************************

Confidentiality notice: The information contained in this e-mail is intended for the named recipients only. If you are not an intended recipient, and have received this message in error, please do not copy, distribute or take any action in reliance on it but notify us immediately at mail@vplaw.gr
************************************************************************

1

THE STATE OF TEXAS       §
                                   §

**COUNTY OF JEFFERSON**       §

## AFFIDAVIT OF ALAN G. SAMPSON

BEFORE ME, the undersigned authority, on this day personally appeared Alan G. Sampson, who after being duly sworn, deposed and stated as follows:

I am an attorney with the law firm of Benckenstein & Oxford, L.L.P., and an attorney for Plaintiff in this case. I have read the foregoing Original Complaint and believe the contents thereof to be true and correct to the best of my knowledge based upon information and documents provided to me by Plaintiff's authorized representative, Milto N. Papangelis, and inquiry with local U. S. Coast Guard Vessel Traffic System personnel.

I have been informed the M/V GO PUBLIC is at the Port of Beaumont, Texas at this time. According to the information provided to me by Mr. Papangelis, Defendant **INDUSTRIAL CARRIERS INC.**, is a foreign entity with a business office in or about Athens, Greece, that induced Plaintiff to provide bunker fuel oil including for the ship M/V GO PUBLIC. The M/V GO PUBLIC is an ocean-going Bahamian flagged freight vessel, currently believed berthed a the Port of Beaumont, Texas, but is subject to and expected to sail or depart the area in the near future, and/or use and consume or otherwise transfer or dispose of the bunker fuel oil aboard; that the said **INDUSTRIAL CARRIERS INC.**, and other Defendants including but not necessarily limited those listed in the Bunker Nomination attached to Complaint as Exhibit "I", is the believed to be in possession and claiming interest

in such property; and I am told and believe such presents exigent circumstance and need for the attachment of said property.

I further affirm that I have personally inquired into **INDUSTRIAL CARRIERS INC.** and other Defendants' (including but not necessarily limited those listed in the Bunker Nomination attached to Complaint as Exhibit "I") presence in this District, and have been advised by the office of the Secretary of State of the State of Texas that **INDUSTRIAL CARRIERS INC.** and the other Defendants are not incorporated pursuant to the laws of Texas, are not registered in such name to conduct business within the State of Texas, and have not nominated an agent for service of process within the State of Texas. A review has also been conducted of the telephone listings in Beaumont, Nederland, Port Neches, Groves, Port Arthur and Orange, Texas, and it has been determined that said Defendants do not have a telephone listing in those cities. It is the best of my information and belief, based upon this investigation, that said Defendants cannot be found within this District for purposes of Rule B or Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, save and except by way of the bunker fuel oil and/or any other property aboard or including the M/V GO PUBLIC.

The reason this Affidavit is made by affiant is that Plaintiff is an entity which has no officers or representatives within this District.

2

Alan G. Sampson

SUBSCRIBED AND SWORN TO BEFORE ME this 17th day of October, 2008.

Notary Public in and
for the State of Texas

BELINDA C RIGSBY
Notary Public, State Of Texas
My Commission Expires
02-27-2011

3